UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JAMES V. BUNCE,                           NO. CIV. 2:13-00976 WBS EFB

       Plaintiff,

    v.                                   MEMORANDUM AND ORDER RE:
                                          MOTION TO DISMISS
OCWEN LOAN SERVICING, LLC; and
DOES 1-10 inclusive,

       Defendants.
_____/

----oo0oo----

      Plaintiff James V. Bunce brought this action against Ocwen Loan Servicing, LLC, and Does one through ten in connection with the attempted modification of his home loan.  Defendant now moves to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 6.)

I.   Relevant Facts and Procedural Background

      Plaintiff resides at 1029 Enwood Road, Roseville, California (the "Subject Property").  (Notice of Removal ("Compl.") ¶ 1 (Docket No. 1).)  On June 23, 2006, plaintiff executed a deed of trust ("Deed of Trust") involving the Subject

1

Property as security for a loan of $325,000 ("Subject Loan") from American Brokers Conduit ("ABC"). (Id. ¶ 9.) Mortgage Electronic Registration Service, Inc. ("MERS") was named as a nominee for ABC and was designated as the beneficiary under the Deed of Trust. (Id. Ex. A.) Plaintiff alleges that defendant "took over the subject loan" in a manner unknown to plaintiff. (Id. ¶ 10.)

In or about 2010, plaintiff's income was reduced and he contacted defendant for assistance with the Subject Loan. (Id. ¶ 11.) Plaintiff was allegedly told to submit loan modification applications on several occasions. (Id.) Defendant allegedly accepted the applications, but denied plaintiff a loan modification without explanation. (Id. ¶¶ 11-14, 16.) Defendant allegedly requested the same documents on multiple occasions and defendant complied, but defendant allegedly rejected plaintiff's applications for a loan modification without a review on the merits. (Id. ¶ 12.) Defendant also allegedly failed to discuss potential options to defer, forbear, or modify the loan payments. (Id. ¶ 11.) While plaintiff alleges that defendant "began foreclosure proceedings" and recorded a notice of default, (id. ¶ 15), its opposition brief admits that a notice of default has not been recorded, (Pl.'s Opp'n at 3:14-15 (Docket No. 13)).

Plaintiff first filed suit in state court, but the action was removed to federal court on May 16, 2013. (Docket No. 1.) Plaintiff brings claims for: (1) violation of California Civil Code section 2923.5, (Compl. ¶¶ 19-24); (2) breach of the implied covenant of good faith and fair dealing, (id. ¶¶ 25-35); (3) "lack of standing," or declaratory relief (id. ¶¶ 36-48); (4)

1  negligence, (id. ¶¶ 49-59); and (5) violation of California

2  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et

3  seq., (id. ¶¶ 60-66).

4  II.  Discussion

5       To survive a motion to dismiss, a plaintiff must plead

6  "only enough facts to state a claim to relief that is plausible

7  on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

8  (2007).  This "plausibility standard," however, "asks for more

9  than a sheer possibility that a defendant has acted unlawfully,"

10 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a

11 complaint pleads facts that are 'merely consistent with' a

12 defendant's liability, it 'stops short of the line between

13 possibility and plausibility of entitlement to relief.'"  Id.

14 (quoting Twombly, 550 U.S. at 557).  In deciding whether a

15 plaintiff has stated a claim, the court must accept the

16 allegations in the complaint as true and draw all reasonable

17 inferences in favor of the plaintiff. Scheuer v. Rhodes, 416

18 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

19 Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

20 (1972).

21      A.  California Civil Code section 2923.5

22      Section 2923.5 requires the mortgage servicer,

23 mortgagee, beneficiary, or authorized agent to "contact the

24 borrower in person or by telephone to assess the borrower's

25 financial situation and explore options for the borrower to avoid

26 foreclosure" at least thirty days before filing a notice of

27 default.  Cal. Civ. Code § 2923.5(b).  Section 2923.5 does not

28 create an affirmative obligation on a lender to offer a loan

3

1  modification.  <u>Clerk v. Telesis Cmty. Credit Union</u>, EDCV 12-
2  01152-CJC(DTBx), 2013 WL 3071250, at *4 (C.D. Cal. June 18,
3  2013).

4          The court cannot find, nor does plaintiff cite, a case
5  in which the court found a violation of section 2923.5 when a
6  notice of default was not filed and the mortgage foreclosure
7  process had not been initiated.  Because plaintiff concedes that
8  no notice of default has been filed, plaintiff's claim under
9  section 2923.5 is not ripe.  <u>See</u> <u>Wienke v. Indymac Bank FSB</u>, No.
10 CV 10-4082, 2011 WL 2565370, at *5 (N.D. Cal. June 29, 2011)
11 (Vadas, Magistrate J.) ("[T]he FAC does not allege that a
12 foreclosure sale is even pending, so the request for injunctive
13 relief [under section 2923.5] is not ripe."); <u>cf.</u> <u>Texas v. United</u>
14 <u>States</u>, 523 U.S. 296, 300 (1998) ("A claim is not ripe for
15 adjudication if it rests upon contingent future events that may
16 not occur as anticipated, or indeed may not occur at all."
17 (internal quotation marks and citations omitted)).  Furthermore,
18 plaintiff's allegations indicate that he has engaged in the loan
19 modification process.  Here, as in <u>Clerk v. Telesis Community</u>
20 <u>Credit Union</u>, "[p]laintiffs admit that they engaged in loan
21 modification discussions . . . ; [p]laintiffs were simply unhappy
22 with the results of those discussions." <u>Clerk</u>, 2013 WL 3071250,
23 at *4.

24          Plaintiff's first claim for violation of section 2923.5
25 must accordingly be dismissed.

26     B.   <u>Breach of the Implied Covenant of Good Faith and Fair</u>
27          <u>Dealing</u>

28          "'There is an implied covenant of good faith and fair

4

dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'"  <u>Dooms v. Fed. Home Loan Mortg. Corp.</u>, No. CV F 11-0352 LJO DLB, 2011 WL 1232989, at *9 (E.D. Cal. Mar. 31, 2011) (quoting <u>Kransco v. Am. Empire Surplus Lines Ins. Co.</u>, 23 Cal. 4th 390, 400 (2000)).  "[I]t is . . . well settled '[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."  <u>Jenkins v. JP Morgan Chase Bank, N.A.</u>, 216 Cal. App. 4th 497, 525 (4th Dist. 2013) (second alteration in original) (citing <u>Smith v. City & County of San Francisco</u>, 225 Cal. App. 3d 38, 49 (1st Dist. 1990)).

"Without a contractual underpinning, there is no independent claim for breach of the implied covenant."  <u>Id.</u> (citing <u>Fireman's Fund Ins. Co. v. Maryland Cas. Co.</u>, 21 Cal. App. 4th 1586, 1599 (4th Dist. 1994)).  "Consequently, an action alleging a breach of the implied covenant cannot be used by a plaintiff to try to extend existing, or to create new, obligations that were not contemplated by the parties when the contract was executed."  <u>Id.</u> at 528 (citing <u>Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 373 (1992)); <u>see</u> <u>Dooms</u>, 2011 WL 1232989, at *9 ("The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." (internal quotation marks and citation omitted)).

In support of his claim, plaintiff points to a single

5

1   sentence in the Deed of Trust, under the section titled "Transfer

2   of Rights in the Property." (See Compl. ¶ 27, Ex. A.)  The

3   sentence states: "This Security Instrument secures to Lender: (i)

4   the repayment of the Loan, and all renewals, extensions and

5   modifications of the Note; and (ii) the performance of Borrower's

6   covenants and agreements under this Security Instrument and The

7   Note." (Id. Ex. A.)  Rather than creating a contractual right to

8   loan modification, this sentence provides that if plaintiff

9   received a loan modification, the right to receive payment from

10  the modification would belong to the lender.  As no other facts

11  suggest that plaintiff had a contractual right to loan

12  modification, "plaintiff has failed to allege nonconclusory

13  factual content from which the court could infer the existence of

14  a modification agreement that could provide the basis for

15  additional duties owed by each party."  Thompson v. Residential

16  Credit Solutions, Inc., CIV. 2:11-2261 WBS D, 2012 WL 260357, at

17  *4 (E.D. Cal. Jan. 26, 2012) (Shubb, J.); see also Jenkins, 216

18  Cal. App. 4th at 525 ("Nowhere in Jenkin's SAC are facts alleged

19  as to how Quality's actions violated an express or implied duty

20  under the deed of trust.").

21          Accordingly, defendant's motion to dismiss plaintiff's

22  second claim for breach of the implied covenant of good faith and

23  fair dealing must be granted.

24      C.   Declaratory Relief

25          In his third claim entitled "Lack of Standing,"

26  plaintiff alleges that defendant does not have a beneficial

27  interest in the Deed of Trust. (Compl. ¶ 40.)  He brings a claim

28  "seek[ing] judicial determination of each parties' rights and

6

1  duties" under the Deed of Trust and an unspecified promissory

2  note. (<u>Id.</u> ¶¶ 41, 48.)[1]  It appears that plaintiff wishes to

3  establish whether defendant may "exercise the power of sale" by

4  recording a notice of default and foreclosing upon the Subject

5  Property. (<u>See</u> <u>id.</u> ¶ 47.)

6         The Declaratory Judgment Act provides, in relevant

7  part, that "[i]n a case of actual controversy within its

8  jurisdiction . . . , any court of the United States . . . may

9  declare the rights and other legal relations of any interested

10 party seeking such declaration." 28 U.S.C. § 2201(a). "[T]he

11 phrase 'case of actual controversy' in the Act refers to the type

12 of 'Cases' and 'Controversies' that are justiciable under Article

13 III." <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127

14 (2007). The Supreme Court's decisions "have required that the

15 dispute be 'definite and concrete, touching the legal relations

16 of parties having adverse legal interests'; and that it be 'real

17 and substantial' and 'admi[t] of specific relief of a conclusive

18 character, as distinguished from an opinion advising what the law

19 would be upon a hypothetical state of facts." <u>Id.</u> (alterations

20 in original) (quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S.

21 227, 240-41 (1937)). "In effect, [the Declaratory Judgment Act]

22 brings to the present a litigable controversy, which otherwise

23 might only by [sic] tried in the future." <u>Societe de</u>

24 <u>Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.</u>, 655 F.2d

25

26        [1]   Plaintiff appears to argue that MERS, BNYM, and the
   REMIC Trust do not have a beneficial interest in the Deed of
27 Trust. (Compl. ¶¶ 42-45.) MERS is listed as the beneficiary in
   the Deed of Trust, (<u>id.</u> Ex. A), but plaintiff fails to allege or
28 explain BNYM or REMIC Trust's relationship to the case.

                                  7

1  938, 943 (9th Cir. 1981).

2          California Civil Code sections 2924 through 2924k "set

3  forth a 'comprehensive framework for the regulation of a

4  nonjudicial foreclosure sale pursuant to a power of sale

5  contained in a deed of trust.'" Jenkins, 216 Cal. App. 4th at

6  508 (quoting Moeller v. Lien, 25 Cal. App. 4th 822, 830 (2d Dist.

7  1994)).  Under section 2924(a), "a 'trustee, mortgagee, or

8  beneficiary, or any of their authorized agents' may initiate the

9  foreclosure process." Gomes v. Countrywide Home Loans, Inc., 192

10 Cal. App. 4th 1149, 1155 (4th Dist. 2011) (quoting Cal. Civ. Code

11 § 2924(a)).

12         Since a notice of default has not been recorded and the

13 foreclosure process has not been initiated, the court cannot know

14 whether the foreclosure process will even commence, let alone

15 what party would be exercising the power of sale, under what

16 alleged authority, and in what manner. Cf. Jenkins, 216 Cal.

17 App. 4th at 512 (distinguishing between an action to determine a

18 party's right to foreclose upon a property which impermissibly

19 "seeks to create 'the additional requirement' that the

20 foreclosing entity must 'demonstrate in court that it is

21 authorized to initiate a foreclosure,'" and an action which

22 "seek[s] a remedy for a foreclosing party's misconduct with

23 regards to the initiation and processing of the nonjudicial

24 foreclosure, which . . . may serve as the basis of a valid cause

25 of action" (quoting Gomes, 192 Cal. App. 4th at 1154 n.5)).

26 Providing declaratory relief at this stage would be an

27 impermissible "opinion advising what the law would be upon a

28 hypothetical state of facts." MedImmune, 549 U.S. at 127.

8

1    Because no actual controversy exists to warrant
2  declaratory judgment, defendant's motion to dismiss plaintiff's
3  third claim for declaratory relief must be granted.

4    D.   Negligence

5    "The elements of a cause of action for negligence are
6  (1) a legal duty to use reasonable care, (2) breach of that duty,
7  and (3) proximate cause between the breach and (4) the
8  plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal.
9  App. 4th 1333, 1339 (2d Dist. 1998) (citation omitted). "The
10  existence of a duty of care owed by a defendant to a plaintiff is
11  a prerequisite to establishing a claim for negligence." Nymark
12  v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1095 (3d
13  Dist. 1991).

14    "[A]s a general rule, a financial institution owes no
15  duty of care to a borrower when the institution's involvement in
16  the loan transaction does not exceed the scope of its
17  conventional role as a mere lender of money." Id. at 1096.
18  "This rule also applies to loan servicers." Lingad v. Indymac
19  Fed. Bank, 682 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) (Burrell,
20  J.) (citation omitted). "[A] loan servicer does not have a duty
21  to a borrower when its involvement does not exceed the scope of
22  its role as a mere loan servicing company." Somera v. Indymac
23  Fed. Bank, FSB, 2:09CV01947 FCD DAD, 2010 WL 761221, at *5 (E.D.
24  Cal. Mar. 3, 2010) (citing cases).

25    Recently, a California appellate court applied six
26  nonexhaustive factors in determining whether a duty existed
27  between the borrower and lender. See Jolley v. Chase Home Fin.,
28  LLC, 213 Cal. App. 4th 872, 899 (1st Dist. 2013). Those factors

9

1    are:

2         (1) the extent to which the transaction was intended to
3         affect the plaintiff, (2) the foreseeability of harm to
      the plaintiff, (3) the degree of certainty that the
      plaintiff suffered injury, (4) the closeness of the
4         connection between the defendant's conduct and the injury
      suffered, (5) the moral blame attached to the defendant's
5         conduct, and (6) the policy of preventing future harm.

6    Id. (citing Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958)); see

7    also Nymark, 231 Cal. App. 3d at 1098-99 (applying the Biakanja

8    factors).

9         Here, plaintiff alleges that defendant owed plaintiff a

10   duty of care because defendant exceeded the scope of its

11   traditional role as a lender of money. (Pl.'s Opp'n at 8:1-16.)

12   All of plaintiff's allegations, however, revolve around

13   defendant's review of plaintiff's loan modification application.

14   (Compl. ¶¶ 50-58.) Even assuming that the court must consider

15   the factors outlined in Jolley, plaintiff's factual allegations

16   concerning the loan modification process are insufficient to

17   plausibly suggest that defendant owed plaintiff a duty of care.

18   See Armstrong v. Chevy Chase Bank, FSB, 5:11-CV-05664 EJD, 2012

19   WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012), appeal dismissed,

20   (Dec. 14, 2012) (finding no duty arose when the plaintiffs

21   alleged that defendant "held out to Plaintiffs that they would be

22   offered a loan modification if their loan was brought current");

23   Arqueta v. J.P. Morgan Chase, No. CIV. 2:11-441 WBS GGH, 2011 WL

24   2619060, at *5 (June 30, 2011) (Shubb, J.) (acknowledging the

25   Biakanja factors and holding that no duty of care arose when

26   defendant accepted and processed plaintiff's loan modification

27   application); Sullivan v. JP Morgan Chase Bank, NA, 725 F. Supp.

28   2d 1087, 1094 (E.D. Cal. 2010) (Burrell, J.) (holding that the

"Plaintiffs' allegations that [the] Defendant misrepresented to them that a permanent loan modification would be put into place are insufficient to form the basis of a negligence claim"); DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390, 2010 WL 4285006, at *4 (N.D. Cal. Oct. 22, 2010) (finding that defendant did not have a duty "to complete the loan modification process").

In Ansanelli v. JP Morgan Chase Bank, N.A., No. C 10-03892, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011), the primary case relied upon by plaintiff in support of its negligence argument, the defendant bank had "agreed to place plaintiffs in a trial payment plan, guaranteeing that if plaintiffs made payments on time . . . [the defendant] would provide a permanent modification of their loan." Ansanelli, 2011 WL 1134451, at *1. The court therefore found that the defendant "went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan." Id. at *7.

Courts have disagreed with Ansanelli's finding that loan modification activities extend beyond the role of a money lender or loan servicer. See, e.g., Armstrong, 2012 WL 4747165, at *4; Johnston v. Ally Fin. Inc., No. 11-CV-0998-H BLM, 2011 WL 3241850, at *4 (S.D. Cal. July 29, 2011) ("In addition, loan modification is an activity that is intimately tied to Defendant's lending role." (internal quotation marks and citation omitted)). In Armstrong, the court explained that "a loan modification, which at its core is an attempt by a money lender to salvage a troubled loan, is nothing more than a renegotiation of loan terms." Armstrong, 2012 WL 4747165, at *4. "Outside of

11

actually lending money, it is undebatable that negotiating the terms of the lending relationship is one of the key functions of a money lender." Id.  The court ultimately found that "[t]he minority of cases which hold otherwise, such as Ansanelli . . . , are unpersuasive." Id.

This court, like the court in Armstrong, finds Ansanelli unpersuasive.  Furthermore, even assuming that Ansanelli is correct in finding that the plaintiff in that case adequately pled a duty of care, the allegations here are distinguishable since plaintiff does not allege that he entered into a trial payment plan with defendant.

Because plaintiff fails to plausibly allege that defendant owed him a duty of care, his fourth claim for negligence must accordingly be dismissed.

E.   UCL

California Business and Professions Code section 17200 et seq. ("UCL") prohibits unfair competition, which is defined to include, in relevant part, "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200. "Because Business and Profession Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition . . . .  In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa." Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotation marks and citations omitted).

"Conduct is considered 'fraudulent' under the UCL if the conduct is 'likely to deceive.'" Pinel v. Aurora Loan Servs., Inc., 814 F. Supp. 930, 941 (N.D. Cal. 2011) (quoting

_Morgan v. AT & T Wireless Servs., Inc._, 177 Cal. App. 4th 1235, 1254 (2d Dist. 2009)).  "A claim under this prong of the UCL is based on the reasonable consumer standard, which requires the plaintiff to 'show that members of the public are likely to be deceived.'"  _Id._ (quoting _Williams v. Gerber Prods. Co._, 552 F.3d 934, 938 (9th Cir. 2008)).  Furthermore, a plaintiff bringing a claim under the UCL's fraudulent prong "must plead and prove actual reliance."  _In re Tobacco II Cases_, 46 Cal. 4th 298, 329 (2009).

UCL claims sounding in fraud must meet the pleadings standards of Federal Rule of Civil Procedure 9(b).  _Vess v. Ciba-Geigy Corp. USA_, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  _Kearns v. Ford Motor Co._, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting _Bly-Magee v. California_, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  _Vess_, 317 F.3d at 1106 (quoting _Cooper v. Pickett_, 137 F.3d 616, 627 (9th Cir. 1997)).

To have standing to bring a claim under the UCL, a person must have "suffered injury in fact and has lost money or property as a result."  Cal. Bus. & Prof. Code § 17204.  To make that showing, they must: "(1) establish a loss or deprivation of

money or property sufficient to qualify as injury in fact, i.e.,
economic injury, and (2) show that that economic injury was the
result of, i.e., caused by, the unfair business practice . . .
that is the gravamen of the claim." Kwikset Corp. v. Superior
Court, 51 Cal. 4th 310, 322 (2011) (emphasis in original).  There
is no causation "when a complaining party would suffer the same
harm whether or not a defendant complied with the law." Daro v.
Superior Court, 151 Cal. App. 4th 1079, 1099 (1st Dist. 2007).

   Here, plaintiff's claim appears to rest on allegations
that defendant misrepresented the loan modification process when
it told plaintiff that his application would be reviewed on the
merits if he submitted certain documentation to defendant.
(Compl. ¶¶ 11-12, 14, 16.)  These allegations sound in fraud and
are therefore subject to the heightened pleading standard of Rule
9(b). See Vess, 317 F.3d at 1103-04.  Plaintiff fails, however,
to adequately specify any alleged misrepresentations "so that
[defendant] can defend against the charge and not just deny that
[it] ha[s] done anything wrong." Kearns, 567 F.3d at 1124.
Plaintiff does not adequately identify the substance of the
alleged misrepresentation, who said it, when it was said, or how
it was false. See Vess, 317 F.3d at 1106.

   Plaintiff also fails to show how defendant's alleged
misrepresentation caused his injury.  He alleges that he was
forced to "exhaust [his] resources, incur additional fees on
interest, penalties and foreclosure costs." (Compl. ¶ 14.)
Putting aside the fact that foreclosure has not yet occurred, and
assuming that these allegations sufficiently state an economic
injury, all of these injuries assume that he would have been

1    granted a loan modification.  Yet plaintiff provides no factual

2    or legal support for the contention that he would have been

3    entitled to a loan modification if he did submit all the required

4    documentation.  See Kimball v. Flagstar Bank F.S.B., 881 F. Supp.

5    2d 1209, 1224 (S.D. Cal. 2012) (noting that HAMP does not require

6    a bank to offer a borrower a loan modification).[2]

7           Accordingly, the court must dismiss plaintiff's fifth

8    claim for violation of the UCL.

9           IT IS THEREFORE ORDERED that defendant's motion to

10   dismiss be, and the same hereby is, GRANTED.

11          Plaintiff has twenty days from the date of this Order

12   to file an amended complaint if he can do so consistent with this

13   Order.

14   DATED:  July 16, 2013

15

16   _____

17   WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

18

19   _____

20        [2]    To the extent plaintiff bases his UCL claim on
     "unlawful" or "unfair" conduct, plaintiff has failed to
21   adequately allege an underlying violation of another law to
     satisfy the "unlawful" prong.  See Lucia v. Wells Fargo Bank,
22   N.A., 798 F. Supp. 2d 1059, 1072 (N.D. Cal. 2011) (rejecting a
     UCL claim based upon violation of Home Affordable Modification
23   Plan ("HAMP") because "there is no private cause of action under
     HAMP" and "'[a] court may not allow a plaintiff to plead around
24   an absolute bar to relief simply by recasting the cause of action
     as one for unfair competition'" (quoting Chabner v. United Omaha
25   Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000))); Berryman v.
     Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (4th Dist.
26   2007) ("Under its unlawful prong, the UCL borrows violations of
     other laws . . . and makes those unlawful practices actionable
27   under the UCL." (alteration in original) (internal quotation
     marks and citation omitted)).  Plaintiff has also failed to
28   include sufficient factual allegations to state a plausible claim
     under the "unfair" prong.

15